RULEY, JUDGE:
In early July, 1976, the claimant crushing company received a letter from the respondent announcing an auction sale of “approximately 1350 junk cars”, to be held at the site where the cars were located near Belington, in Barbour County, on July 23, 1976. In response to the letter, Mr. Mason Herring, owner of the crushing company, visited the site on the day. before the auction and attempted, without success, to count the number of vehicles located there. On the day of the auction and prior to the sale, employees of respondent announced that an additional 158 units had been added to the lot, making a total of 1508. The auctioneer, an employee of the respondent, informed the prospective bidders that they were to bid on what they could see, and the bidders were given ample time to inspect the site and attempt to evaluate the junk. The claimant was the high bidder and proceeded to crush the junk and sell the scrap to a metal recycling company. The claimant contends that it found only 756 junk cars, instead of the 1350 advertised by the respondent, that it incurred a monetary loss of $32,177.50 as a result of the respondent’s alleged misrepresentation, and asks for an award in that amount.
The respondent contends that the auction was a sale in gross (that is, a sale of whatever junk was on the site, not a sale of any specific number of junk cars) and that the respondent performed its part of the sale and, therefore, is not liable.
Several persons who attended the auction testified that, although the auctioneer mentioned the number 1508, he also pointed to the lot and told the bidders, “You’re buying what *207 you see.” The auctioneer testified that he told the bidders that the lot contained 1508 “units”-, and that he proceeded to explain that “unit” was a term used by respondent in record-keeping. He also testified that, in his explanation to the bidders, he defined a “unit” as one load of junk dumped by respondent’s employees at the site, said loads often consisting of less than one junk car.
“A sale by auction is complete when the auctioneer so announces by the fall of the hammer or in other customary manner.” W. Va. Code §46-2-328. Thus, although this sale was later reduced to a written contract (which, incidentally, made no reference to any specific number of cars or units), this Court must analyze the terms of the sale as understood by the parties at the time the hammer fell. “Where the terms and conditions of the sale are plain and unambiguous and are plainly announced at the time and place of sale, they are binding upon a purchaser at the sale, whether he heard them or not and though he may not have understood them.” 2A M.J. “Auctions and Auctioneers”, §9. The evidence in this case clearly reveals that the bidders understood that they were bidding for the right to clear the site of the junk located there, not for any particular number of vehicles. Mr. Herring and his son, apparently not intending to rely on the advertised estimate, visited the site on the day before the auction to count the cars and estimate the value of the junk, and saw the site and the junk again on the day of the sale. Others engaged in the crushing business testified that their concern is with the weight of the junk, since they sell it by the ton. The number of cars may be a useful tool for estimating the weight and, hence, the value of the junk, but it is understood to be an imprecise measure. From the evidence, the Court is constrained to conclude that the number of cars at the site was not a material element of the sale. Both claimant and respondent understood the terms of the sale to include all the vehicles, parts of vehicles, or other junk at the site, irrespective of the number of cars there. Mr. Herring’s failure to hear the auctioneer’s explanation of “unit” does not make the respondent responsible for Mr. Herring’s failure to estimate accurately the amount of junk at the site.
*208 In a similar Virginia case, an auctioneer stated that a tract of land for sale consisted of two acres, but pointed to the enclosure of the tract at the same time. The successful bidder, upon finding that the tract contained only “one acre and twelve poles”, refused to pay. The seller was granted a bill for specific execution against the buyer, the Court holding that “it was a purchase of the lot of ground, such as it was, whether it was more or less than two acres”, and denied the buyer’s request for abatement of the price. Foley v. McKeown, 4 Leigh 627, 31 Va. 1059 (1833). See also Grantland v. Wight, 2 Munford 179, 16 Va. 357 (1811). The same principles apply to this case inasmuch as this was a sale of the lot of vehicles, cars, or junk. Thus, under the facts of this case and the applicable law, the Court must find the claimant’s contention to be without merit and deny this claim.
Claim disallowed.